No. 19,674.

*In re* THE DISBARMENT OF OTTO J. BRILEY.

SYLLABUS BY THE COURT.

ATTORNEY AT LAW—*Disbarment Proceeding—Dismissed.* A proceeding for the disbarment of an attorney is dismissed because no four of the justices concur in a decision on the merits, two being disqualified from sitting.

Original proceeding in disbarment. Opinion filed April 8, 1916. Proceeding dismissed.

*F. P. Lindsay,* and *S. M. Brewster,* both of Topeka, for the accuser.

*Otto J. Briley,* formerly of Chanute, *pro se.*

The opinion of the court was delivered by

MASON, J.: Affidavits were presented to the board of bar examiners charging Otto J. Briley, of Chanute, a member of the bar, with unprofessional conduct. Most of the affidavits had been made during an investigation by a committee of lawyers of Neosho county, in March, 1913. The board on August 5, 1914, filed in this court an accusation upon which his disbarment was asked. Notice was served on Briley as required by law. An answer was filed September 15, 1914, and a reply ten days later. On June 16, 1915, the affidavits which had been before the board were filed here, and a copy of them was served upon the accused, with the intent that they should become admissible as evidence unless he should give notice of objection within five days, in accordance with the statute (Civ. Code, § 350). He gave no such notice. The case was set for trial in October, 1915, and as no further appearance was made by or for the accused it was submitted on the evidence of the prosecution and a judgment of disbarment was rendered against him. Within twenty days he filed a verified petition for rehearing, giving his version of the transactions on which the prosecution was based, and alleging "that he had never been advised of there being any rule of law or court that an exception must be taken to an affidavit in five days or that it

*In re* Briley.

should be considered as a deposition in the case, and if such a rule of law exists, that it is not to be applicable in this case, for the affidavits were taken in another proceeding, before another tribunal, and nearly two years before this action was instituted." A rehearing was granted, and time was given for the taking of any evidence desired, additional to that already on file. The case has again been submitted on the same evidence, together with a few additional affidavits, including those of the accused, and some documents.

The court is asked to disregard the affidavits presented by the prosecution on the grounds indicated in the part of the petition for a rehearing above quoted. Whether the objection would have been sustained if seasonably made need not be determined. In view of what has already been stated, the accused is not now in a position to urge it. The affidavits will not be excluded, but all the circumstances attending their making will be considered in determining their weight.

The accusation contains four charges. The first one is that he brought two actions without the authority of the plaintiffs, and in violation of their express direction not to do so. The following facts in regard to the matter are not disputed. In November, 1908, Briley brought thirty-two attachment actions before F. M. Groome, a justice of the peace, against the proprietor of a traveling show, for the wages of employees. The showman replevined the attached property and began a suit against Groome and another justice of the peace, before whom some other similar cases had been brought, and two constables, to enjoin any further attachments, a restraining order being allowed. Briley filed a demurrer in the injunction suit for Groome, and for B. F. Nye, one of the constables. On June 28, 1909, the suit was dismissed by the plaintiff. On October 29, 1909, Briley, as attorney for Groome and Nye, began an action for each of them upon the injunction bond. In July, 1910, each filed an affidavit stating that he had not authorized such a suit. A hearing was had on the matter, at which they testified orally, and the court dismissed the cases at the cost of Briley.

It is quite clear that on the day the injunction action was dismissed (June 28, 1909) Groome and Nye each signed a cost bond for the other as a basis for an action on the injunction

bond. It appears that at one time they denied signing the cost bonds, but this denial was doubtless due to the long interval between their execution and the bringing of the actions. It was natural that they should at first fail to connect the papers they had signed in June with the actions that were brought in their names in October. An affidavit of Groome is to the effect that he and Nye told Briley they did n't want to be made subject to any costs in the matter, and that as an offset to any costs that were likely to follow they "gave him a bond for claiming fees" in case they were taken to Erie; that the same evening they received word that the injunction case had been dismissed and the costs paid; that the next morning they went to Briley's office and instructed him not to file the cases, as the injunction suit had been dismissed, and they thought that should satisfy everybody; that Briley said he thought so too—thought they were right; that Groome and Nye only learned of the filing of the actions in their names about a year later, by reading of it in the papers. An affidavit of Nye confirms Groome's version of the conversation with regard to dropping the proposed actions on the bond, and as to the actions being begun without their knowledge.

Briley denies the conversation referred to, and asserts that Groome and Nye authorized him to bring the actions for them. In one of his affidavits he says that the attorney for the showman "bluffed the said Groome and Nye into making a statement that they had not authorized suit." He also verifies by his oath an assertion that the district court assessed to him the costs in the Groome and Nye cases "without authority of law" and "arbitrarily." These declarations of course amount only to an expression of opinion.

There is a direct issue of fact between Groome and Nye on the one hand and Briley on the other. The district court, having heard the oral testimony, evidently accepted their version of the affair or it would not have taxed the costs to Briley. This evidence is quite persuasive that Briley was not in fact authorized to bring the actions, but does not to the same extent exclude the possibility that he may have been under a misapprehension in the matter, and may have supposed his course was satisfactory to Groome and Nye.

The second charge is that the accused, having begun an

*In re* Briley.

action upon several notes in the name of one claiming to have purchased them from the payee, and having attached to the bill of particulars the original notes, which were not indorsed, afterwards withdrew them, supplying copies in their place, and at the trial undertook to introduce them in evidence, the indorsement of the payee having in the meantime been placed upon them; but upon the attention of the court being called to the change, dismissed the case. Briley's version of the affair is that the letter transmitting to him the notes for collection stated that they had been indorsed, and that he attached them to the petition supposing that to be the case; that upon discovering the omission he withdrew them, with the consent of the justice of the peace, substituting copies, and returned them to the sender to have the indorsement made, receiving them back after they had been indorsed by the payee. So far his statement is supported by the record and documentary evidence. He further testifies, in substance, that after receiving the notes the second time he told the maker he would dismiss the case if shown that the goods for which the notes were given had been returned; that the defendant showed him bills of lading indicating such return, and he thereupon dismissed the case. The attorney who represented the maker of the notes states in an affidavit that when the case was called for trial Briley introduced the notes in evidence, and only dismissed the case after objection had been made on the ground that the indorsements had been written since the commencement of the action. Letters written to Briley by the lawyer from whom he received the notes laid stress upon the fact that his desire was to cut off the defense based on the return of the goods by invoking the protection given by the law to innocent indorsees. Briley's own statement indicates that he had become convinced that the defense referred to could be established if it were open. The fact that after acquiring this information he offered the indorsed notes in evidence seems to three members of the court strongly to support the view that it was his purpose to obtain judgment upon the notes, if possible, upon the theory that they had been indorsed to the plaintiff before maturity, while he knew the fact to be otherwise, and that he dismissed the case only when he found that the time of the indorsement was known to his opponent. The statute makes the

39—97 KAN.

willful violation of his oath a ground for disbarring or suspending an attorney. (Laws 1913, ch. 64, ¶ 2.) Attorneys of this court are required to swear that they will not knowingly foster or promote, or give their assent to, any fraudulent, groundless or unjust suit. (Rule 23.) The action upon the notes in question, so far as it was based upon the plaintiff's claim to be a holder in due course, was a fraudulent, groundless and unjust suit.

The third charge is that the accused refused to pay over on demand money collected for a client. The undisputed facts in the matter are these: Briley was employed by Ed McClane to prosecute a personal-injury action under an agreement that he was to receive a fee equal to half the amount recovered, McClane to pay all costs and expenses. With the consent of Briley, McClane later employed another attorney to assist in the case. A settlement was had for $300, which was collected by the other attorney, who paid the costs, amounting to about $30, and retained his own fee, remitting the balance, $201.01, to Briley. Briley paid McClane $75 and kept the remainder. In the accusation it is assumed that the compensation of the other attorney was to come out of Briley's fee of fifty per cent, but no showing is made on either side as to what the agreement was in that regard. Briley testifies that he had incurred expenses in the matter for which under the contract he was entitled to reimbursement in excess of what he deducted on that account, the amount of the expense or the deduction not being stated, and that McClane was satisfied with the settlement. McClane's testimony was not produced. This charge therefore is not established.

The fourth charge is that the accused told an attorney who held for collection a note given by him for law books, title to which was reserved as security therefor, that he would deliver the books or pay the money at once; that later he told him the books were in his office, but that he had decided not to deliver them, and would pay for them when he could; that the attorney at once brought replevin, but the accused then said that the books had been in Oklahoma for two months. Briley states that the publishers have his title-note, on which $89 remains unpaid, for the books referred to, and that he shipped them to Oklahoma; but he denies that he did so to evade the

replevin process, denies the statements attributed to him regarding the delivery of the books, and says that he offered to pay $92 in full of the claim against them, and the offer was refused. Some controversy exists as to the amount owing on the books, but this is not vital. The important question is whether Briley delayed the replevin action by promises in order to get the property beyond the reach of process. This turns largely upon the issue of veracity or memory between Briley and the attorney representing the book company, there being, however, some room for mutual misunderstanding.

Two members of the court do not participate in the hearing, one of them having signed the accusation as attorney-general and the other having been consulted regarding the matter while still in the practice. Of the remaining five members three think a case has been made out against the accused requiring discipline in some form, and the other two are of the contrary opinion. As the concurrence of four justices is necessary to a decision in a case heard by the whole court—by the court when not sitting in divisions—no determination on the merits can be had, and the proceeding must be dismissed.

MARSHALL, J., and DAWSON, J., not sitting.